**Walter Francis TREMAYNE, Appellant,**

v.

**L. S. NELSON, Warden of San Quentin Prison, Appellee.**

No. 74–3131.

United States Court of Appeals, Ninth Circuit.

May 17, 1976.

Sonja Sandeman and John Eshleman Wahl (argued), San Francisco, Cal., for appellant.

Patricia D. Benke, Deputy Atty. Gen., San Diego, Cal. (argued), for appellee.

Before ELY and GOODWIN, Circuit Judges, and EAST,* District Judge.

PER CURIAM:

Walter Francis Tremayne appeals from the district court's denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. He is serving a state sentence for murder. Our jurisdiction is based on 28 U.S.C. § 2253.

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Tremayne argues two points that require comment: (1) that the government did not show, and the district court did not find, that his consent to a search was voluntary; and (2) that when officers asked permission to search his house for a second time, they should have advised him of his "Miranda" rights.

Tremayne was convicted largely on the basis of the physical evidence found in his house. During the month prior to the challenged searches, police had been investigating the mysterious disappearance of. Tremayne's wife. Shortly after police found her body in an abandoned car, they made an appointment to interview Tremayne. At the interview, police gave Tremayne the usual *Miranda* warnings and asked his permission to search the house. The officers did not advise Tremayne that he had the right to refuse permission. He consented to the search.

In *United States v. Heimforth*, 493 F.2d 970 (9th Cir.), *cert. denied*, 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974), we said that the "totality of the circumstances" test[1] for determining the voluntariness of consent implied an obligation on the part of trial courts to make specific findings of fact about the circumstances. We specifically refrained, however, from requiring findings in all suppression hearings; but we remanded Heimforth's case because the material facts were not entirely clear. Moreover, *Heimforth* specifically extends only to cases in federal court.

■ Constitutional rights may be protected by a state-court system which has developed its own methods of testing the voluntariness of consent. *See, e. g., In Re Terry*, 4 Cal.3d 911, 923–24, 95 Cal.Rptr. 31, 40, 484 P.2d 1375, 1384, *cert. dismissed*, 404 U.S. 980, 92 S.Ct. 348, 30 L.Ed.2d 295 (1971).

■ In this case, another court has made the specific finding that Tremayne seeks.

*People v. Tremayne*, 20 Cal.App.3d 1006, 1016, 98 Cal.Rptr. 193, 199 (4th Dist. 1971). The first consent to search was voluntary by any standard.

■ After the first search, during which an incriminating blood stain was found, the police arrested Tremayne. The next day, a police investigator visited Tremayne in jail and asked his permission to search the house a second time. Tremayne again consented. Now he argues that the policeman's failure to repeat the *Miranda* warnings before requesting the second consent violated his Fourth and Fifth Amendment rights, because asking for permission to search "was tantamount to asking for a confession".

This proposition cannot withstand the definitions of "incriminating statement" and "search" developed in *Schmerber v. California*, 384 U.S. 757, 762–65, 86 S.Ct. 1826, 1831, 1832, 16 L.Ed.2d 908, 914–916 (1966). *See also Fisher v. United States*, — U.S. ——, 96 S.Ct. 1569, 48 L.Ed.2d 39, 44 U.S.L.W. 4514 (1976). Nor do the California authorities cited by Tremayne convince us.[2]

The second search clearly involved Fourth Amendment interests, but the state trial court found upon a solid evidentiary record that Tremayne's consent to the search was freely given. The district court also correctly measured the state's showing of consent by the standards set forth in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). There was no error.

In disposing of Tremayne's appeal in the state's appellate system, the court of appeal spoke of "harmless error" in discussing some of Tremayne's statements which he gave the police at or about the time of his arrest. He volunteered some information before he was arrested, and furnished addi-

---

1. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

2. *People v. Abbott*, 3 Cal.App.3d 966, 84 Cal. Rptr. 40 (1st Dist. 1970); and *People v. Layton*, 29 Cal.App.3d 349, 105 Cal.Rptr. 509 (3d Dist. 1972). Both involved policemen asking defend-

ants if they possessed narcotics. Even though the question could be considered as relating to a possibly impending search, the questions were the sort of inculpatory questions sanctioned by *Miranda*.

tional information after he had been advised of his rights. The state appellate court said, "assuming \* \* \* the order overruling the objection was error, we conclude the error was harmless \* \* \*." 20 Cal.App.3d at 1021, 98 Cal.Rptr. at 202. We have examined the transcript and find no reason to assume that there was an error. There was no Fifth Amendment reason for excluding the challenged evidence. Accordingly, we need not criticize the state court's "harmless error" language.

Affirmed.