The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Richard Allen PRICE, Defendant–
Appellant.

No. 08CA1240.

Colorado Court of Appeals,
Div. VII.

June 24, 2010.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Offices of Sandomire & Schwartz, Gabriel N. Schwartz, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LICHTENSTEIN.

Defendant, Richard Allen Price, appeals his conviction following a jury trial. Price contends that the trial court erred by denying his motion for mistrial which was prompted by his mid-trial suicide attempt, that there was a fatal variance between the charging documents, and the verdict forms and that he received ineffective assistance of counsel. We do not address the ineffective assistance of counsel claim and affirm the judgment.

## I. Background

In February 2006, the People charged Price with one count of sexual assault on a child, four counts of sexual assault on a child as part of a pattern of sexual abuse, and five counts of aggravated incest, all based on alleged sexual assaults of S.P. At the beginning of the second day of trial, Price failed to appear. During a recess, the parties and the court learned Price had attempted suicide and was in the hospital on a mental health hold. The court denied Price's counsel's mistrial motion prompted by this event, and ordered the trial to proceed. The court read the jury a stipulated instruction stating that Price was voluntarily absent from trial, but that the jury was not to draw any adverse inference against him from his absence.

At the conclusion of trial, the jury found defendant guilty on all ten charges. The court imposed concurrent and consecutive sentences, resulting in a twenty-year sentence in the custody of the Department of Corrections.

This appeal followed.

## II. Denial of Mistrial

Price first contends that the trial court erroneously denied his motion for a mistrial. He argues that the trial court erred by (1) determining that he was voluntarily absent under Crim. P. 43, and (2) failing to hold a competency hearing before determining that he had waived his right to be present. We conclude that both arguments fail.

"A mistrial is a drastic remedy and is warranted only if the prejudice to the accused is too great to be remedied by other means." *People v. Rosa*, 928 P.2d 1365, 1372 (Colo.App.1996). We will not disturb the decision of the trial court to deny a defendant's motion for a mistrial absent a showing of a gross abuse of discretion and prejudice to the defendant. *Id.*

### A. Waiver of Right to be Present

Whether a defendant waived his right to be present at trial under both the United States and Colorado Constitutions. U.S. Const. amends. VI & XIV; Colo. Const. art. II, § 16; *People v. Stephenson*, 165 P.3d 860, 868 (Colo.App.2007). As with other constitutional rights, the right to be present during trial is not absolute and may be waived. *See Luu v. People*, 841 P.2d 271, 273 (Colo.1992).

An effective waiver of the right to be present is a mixed question of fact and law that we review de novo. *See Campbell v. Wood*, 18 F.3d 662, 672 (9th Cir.1994); *see also People v. Bergerud*, 223 P.3d 686, 693 (Colo.2010) (stating de novo standard applies to review for waiver of a constitutional right).

The trial court is responsible for ensuring that the defendant's waiver of the right to be present at trial is voluntary, knowing, and intelligent. *People v. Campbell*, 785 P.2d 153, 155–56 (Colo.App.1989), *rev'd on other grounds*, 814 P.2d 1 (Colo. 1991). Although the preferred method of establishing a waiver is through colloquy with the defendant, *see id.* at 155, a defendant may waive his or her right to be present by his or her actions, including voluntary absence, after the trial has been commenced in his or her presence. Crim. P. 43(b); *Stephenson*, 165 P.3d at 868; *see Crosby v. United States*, 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993). The purpose of this principle is to prevent a defendant from frustrating a trial in progress by his own conduct. *See Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973); *Campbell*, 785 P.2d at 155.

Crim. P. 43(b)(1) codifies the general rule applicable where a defendant voluntarily absents himself from trial:

The trial court in its discretion may complete the trial, and the defendant shall be considered to have waived his right to be present, whenever a defendant, initially present:

(1) Voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to remain during the trial. . . .

The division in *Stephenson* construed this rule to conclude that

absence from trial compelled by medical necessity may generally be deemed voluntary, and ... determining whether a defendant is "voluntarily absent" in such a case requires a fact-specific inquiry into the type of medical condition and circumstances surrounding his or her absence, including an inquiry into the defendant's conduct and statements.

165 P.3d at 870.

Notably, the *Stephenson* division reached this conclusion by adopting the reasoning of federal cases that held that a defendant may effect a voluntary waiver of the right to be present at trial by attempting suicide once trial has already begun. *See United States v. Crites*, 176 F.3d 1096, 1098 (8th Cir.1999) (the defendant was voluntarily absent based on his mid-trial suicide attempt accompanied by a suicide note which stated, "This is the only way I can feel like I have won a little bit. I am paying the price, but not the way they wanted me to."); *United States v. Davis*, 61 F.3d 291, 300–03 (5th Cir.1995) (a defendant who attempted suicide and was subsequently hospitalized was voluntarily absent under Fed.R.Crim.P. 43 and waived right to be present at trial); *cf. United States v. Latham*, 874 F.2d 852, 858–59 (1st Cir.1989) (although the defendant voluntarily ingested overdose of cocaine and was hospitalized during trial, he was not voluntarily absent because record showed defendant wanted to attend the trial, ingested drugs only to calm his nerves, and did not intend to commit suicide).

Thus, under *Stephenson* and the above-cited federal authorities, a defendant's absence may be deemed voluntary where the record establishes that he or she created the

medical necessity in order to effect his or her absence from trial.

Here, the record indicates that Price was present on the first day of his jury trial, at which S.P. testified at length about years of alleged sexual abuse by Price. On the second day of trial, Price failed to appear. Defense counsel was able to contact him by phone and Price stated he would be in soon. He told counsel he did not want to pursue the trial any longer, but instead wanted to enter a guilty plea. Rather than appear, Price attempted suicide by cutting his wrists and throat, requiring his hospitalization. He left a note stating, "I cannot live with the crap trial that I am going through in Douglas County. It's all lies and coached by the D.A.'s office...." He was placed on a mental health hold at the hospital.

Based on this information, the trial court determined that Price had voluntarily absented himself from the trial and thus waived his right to be present. The court stated,

> Looking at his own words, it's clear that he understood. This was not an accidental event such as taking a drug overdose. This was a purposeful act. He has thought through the fact he did not want to be at trial. He did not want to participate in this trial and he didn't want to go to prison.

■ The trial court properly conducted a fact-specific inquiry into the circumstances surrounding the absence, including an inquiry into Price's conduct and statements. *See Stephenson,* 165 P.3d at 870. As evidenced by the record, Price was aware his trial was taking place by attending the first day. His suicide note, discovered after his suicide attempt, reflected both that he understood the proceedings against him and that he purposefully determined to absent himself from the trial. Under these circumstances, we conclude the trial court did not err by finding that Price had voluntarily absented himself from trial by his conduct, thereby waiving his right to be present under Crim. P. 43(b)(1).

**B. Competency**

Price also contends that once defense counsel informed the court that competency was an issue based on the attempted suicide and resulting mental health hold, the trial court erred by failing to follow the mandate of former section 16–8–110, which directed a court to determine a defendant's competency under the procedures of former section 16–8–111. We disagree.

■ We review a trial court's competency determination for an abuse of discretion. *People v. Palmer,* 31 P.3d 863, 865–66 (Colo. 2001); *Stephenson,* 165 P.3d at 866. To show an abuse of discretion, a defendant must establish that under the circumstances the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993).

■ It is well established that subjecting an accused to trial when he or she is incompetent violates the defendant's constitutional right to due process. *Drope v. Missouri,* 420 U.S. 162, 172–73, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Jones v. Dist. Court,* 617 P.2d 803, 806 (Colo.1980). In Colorado, a defendant's due process rights in regard to competency are protected by statute. Former section 16–8–110(2)(a) [1] required a trial court to suspend criminal proceedings and determine the competency or incompetency of a defendant under former section 16–8–111, *whenever the court "has reason to believe that the defendant is incompetent to proceed"* (emphasis added).

Former section 16–8–102(3), as applicable here, provided that a defendant is "incompetent to proceed" if he or she suffers from a mental disease or defect that renders him incapable of (1) understanding the nature and course of the proceedings against him or her, or (2) participating or assisting in his or her defense or cooperating with his or her defense counsel.[2]

---

1. Repealed by Ch. 389, sec. 8, 2008 Colo. Sess. Laws 1855, effective July 1, 2008, and re-enacted as section 16–8.5–102(2)(a), C.R.S.2009, including a reference to section 16–8.5–103, C.R.S. 2009.

2. Repealed by Ch. 389, sec. 3, 2008 Colo. Sess. Laws 1850, effective July 1, 2008. The current definition is set forth in section 16–8.5–101(11), C.R.S.2009 ("'Incompetent to proceed' means that, as a result of a mental disability or develop-

Section 16–8–102(4.7), C.R.S.2009, defines "mental disease or defect" in pertinent part as "only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality."

▮▮▮ If a "sufficient doubt" of competency has been raised, a trial court's failure to make a competency determination violates a defendant's right to due process. *People v. Kilgore*, 992 P.2d 661, 663 (Colo.App.1999).

> However, due process does not require trial courts to "accept without questioning a lawyer's representations concerning the competence of his client." Rather, it is only if such representations, either alone or in conjunction with other evidence, raise a "bona fide doubt" of the defendant's competence that a court must address the issue.

*Id.* (quoting *Morino*, 743 P.2d at 51); *see also Stephenson*, 165 P.3d at 866. Accordingly, if a "bona fide doubt" regarding the defendant's competency has *not* been established by counsel's representations and the circumstances, the trial court is under no duty to suspend the proceedings and determine the defendant's competency under the procedures set forth in former section 16–8–111.[3]

Here, Price's counsel informed the court that Price had cut himself on both sides of his neck and on both wrists, that he had been placed under a mental health hold, and that his surgeon estimated that he would not be able to sit through a trial for two to three weeks. Defense counsel asserted that Price's actions implicated his competency to proceed to trial, stating that "[i]n this particular situation by trying to take one's life, now we delve into the area of mental health, mental health and incompetency both." Counsel also asserted that because of Price's absence from the trial, Price was not able to

assist in his defense or cooperate with counsel. Counsel requested the court to perform the statutory "two-step analysis" to determine his competency. The trial court declined Price's counsel's request, stating,

> [T]he fact that he's under a mental health hold does not mean that he's not competent. It means that he's a danger to himself or others and has to be evaluated in that context. Being a danger to yourself or others does not meet the qualifications of incompetency for trial.

The court denied defense counsel's motion for mistrial and trial proceeded in Price's absence.

▮▮▮ We conclude the court did not abuse its discretion. A defendant's suicide attempt alone is not necessarily sufficient to establish a "bona fide doubt" as to a defendant's competency to stand trial. *Compare Davis*, 61 F.3d at 304 (because the record did not include any information, apart from the defendant's suicide attempt, that cast doubt on her competency, the trial court did not abuse its discretion in failing sua sponte to order a competency hearing), *with Drope*, 420 U.S. at 180, 95 S.Ct. 896 (prior psychiatric evaluations of the defendant and the defendant's wife's testimony regarding his irrational and strange behavior, coupled with the defendant's suicide attempt, "created a sufficient doubt of his competence to stand trial to require further inquiry on the question").

▮▮▮ Here, the court was presented with no information demonstrating that Price suffered from a "mental disease or defect" or that he exhibited prior mental instability. To the contrary, the court received evidence of an isolated event predicated on Price's understanding of the nature and course of the proceedings against him. As the trial court noted, Price's suicide note and his communications with his counsel reflected that, "it's clear that he understood ... he has

---

mental disability, the defendant does not have sufficient present ability to consult with defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense, or that, as a result of a mental disability or developmental disability, the defendant does not have a rational and factual understanding of the criminal proceedings.").

3. Repealed by Ch. 389, sec. 9, 2008 Colo. Sess. Laws 1856, effective July 1, 2008, and re-enacted as section 16–8.5–103, C.R.S.2009, with procedural changes. Both the former and current versions address procedures such as a court's preliminary finding, requests for evaluations and hearings, and the court's final determination whether a defendant is competent or incompetent.

thought through the fact he did not want to be at trial."

 Although defense counsel presented evidence that Price was placed on a mental health hold, we are not persuaded that the accepted medical protocol of placing a patient on a mental health hold following a suicide attempt supports Price's contention that there was a "bona fide doubt" as to his competency. Because attempted suicide alone is not necessarily sufficient to create a "bona fide doubt" as to a defendant's competency, a procedure that necessarily follows every suicide attempt similarly does not raise such a doubt. *See Davis,* 61 F.3d at 304 n. 8 (decision to subject defendant to a mental health evaluation following her suicide attempt does not raise a competency concern where such evaluations were performed for every patient admitted after a suicide attempt).

Price next asserts that he was incompetent because his physical absence from trial rendered it impossible for him to cooperate with or assist his counsel. Again, we are not persuaded. While Price's physical absence may have made communication between counsel and Price more difficult, it was not a "mental disease or defect" rendering Price incapable of cooperating with or assisting his counsel under former section 16–8–102(3).

Accordingly, we find no abuse of discretion in the trial court's implicit determination that defense counsel failed to establish a "bona fide doubt" as to Price's competency. Consequently, the trial court did not err when it did not follow the procedural requirements of former section 16–8–111, and did not deprive Price of his constitutional right to due process.

Based on our resolution of these issues, we conclude the trial court did not improperly deny Price's request for a mistrial.

### III. Price's Promise to Testify

Price contends that his failure to testify constitutes a structural error because his counsel informed the jury during opening argument that Price would testify. We disagree.

 A defendant's right to testify at trial is a fundamental constitutional right that may only be waived by the defendant. *Rock v. Arkansas,* 483 U.S. 44, 49, 51–52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *United States v. Ward,* 598 F.3d 1054, 1059 (8th Cir.2010). However, a defendant may effect a valid waiver of the right to testify by voluntarily absenting himself from trial once it has begun. *See Taylor,* 414 U.S. at 19–20, 94 S.Ct. 194 (rejecting the defendant's contention that proceeding with trial under Fed. R.Crim.P. 43, notwithstanding his voluntary absence, improperly foreclosed his right to testify and right to confrontation); *see also Yancey v. State,* 219 Ga.App. 116, 464 S.E.2d 245, 245 (1995) (citing *Taylor* ).

 Because Price voluntarily absented himself from trial, thus waiving his right to be present, he also waived the corresponding right to testify on his own behalf. Consequently, we find no error, much less structural error.

### IV. Variance

Price next contends that there was a fatal variance between the charging documents and the charge of which he was convicted, requiring reversal of his conviction. He asserts that he preserved this issue at trial by requesting a bill of particulars from the prosecution, which he never received. Assuming without deciding that such a request sufficiently preserved the issue presented, we disagree with Price's contention that there was a fatal variance existed between the charging document and what was proved at trial.

 A variance occurs when, for example, the date of offense alleged in the information is different from the date of offense proved at trial. *People v. Huynh,* 98 P.3d 907, 911 (Colo.App.2004). Such a variance "is not fatal, absent a showing that the defendant was impaired in his defense to the charge at trial or in his ability to plead the judgment as a bar to a subsequent proceeding." *People v. Young,* 923 P.2d 145, 148 (Colo.App.1995) (citing *People v. Adler,* 629 P.2d 569, 571 (Colo.1981)).

The People originally charged Price with sexual assault of a child *under the age of*

*fifteen,* and four additional pattern counts, all alleged to have been committed between May 1, 1995 and May 31, 1996. The court granted the People's first motion to amend the charges in counts one through five to charge Price with sexual assault on a child *between the ages of fifteen and seventeen.* The amended charges continued to allege the assaults were committed between the dates of May 1, 1995 and May 31, 1996 (the victim's date of birth was March 8, 1978, rendering her eighteen years old as of March 8, 1996).

Price subsequently requested a bill of particulars to narrow the dates charged in the information; however, his counsel stated at a motions hearing that this request would be held in abeyance because he and the prosecutor had come to an agreement regarding the charges. On the first day of trial, the People again moved to amend counts one through five to include only dates when the victim was under eighteen. Defense counsel agreed to this amendment and agreed to the amended charges being read to the jury. The People presented evidence at trial that Price committed sexual assaults on the victim up to the time of her eighteenth birthday. Both the jury instructions and the verdict forms reflected that Price was charged in counts one through five with sexual assault on a child between the ages of fifteen and seventeen, committed between May 1, 1995 and March 7, 1996. After trial, the court granted the People's motion to amend the charging documents nunc pro tunc to the first day of trial to indicate that the charges in counts one through five involved acts committed between May 1, 1995 and March 8, 1996.

Price contends on appeal that the variances between the date ranges in the original and amended charging documents "constitute variances to which the holdings [sic] of *People v. Lopez . . .* apply," and he also asserts that these charging documents include dates during which committing the offense was legally impossible. We are not persuaded.

In *People v. Lopez,* 140 P.3d 106 (Colo. App.2005), the prosecution presented evidence at trial that the defendant failed to register as a sex offender on dates subsequent to those charged in the information. The prosecution argued in closing that this evidence was sufficient to support the charge.

The *Lopez* division determined that a new trial was warranted because "evidence of [the defendant's] conduct on occasions other than the day charged in the information impaired his ability to defend against the charge, and prejudiced him in preparing and presenting his defense." *Id.* at 110.

██ Here, in contrast, the evidence presented to the jury, the jury instructions, and the verdict form encompassed a date range *within* the date range of the original and amended charging documents. Unlike in *Lopez,* the evidence presented did not indicate, and the People did not argue, that Price committed the sexual assaults on "occasions other than the day charged in the information." Consequently, Price has not established he was prejudiced in preparing or presenting a defense due to any variance between the charges and the evidence at trial. Further, the date range presented to the jury ended prior to the date on which the named victim turned eighteen years old. Thus, the jury did not convict Price for committing an offense on dates that committing it would have been legally impossible.

Under these circumstances, a new trial is not warranted.

### V. Ineffective Assistance of Counsel

Price finally contends that he is entitled to a new trial because he received ineffective assistance of trial counsel. He argues that his trial counsel's stipulation to the similar acts evidence was outside the scope of reasonable conduct for defense counsel. Because this issue is not properly postured for our review, we decline to address it on appeal.

██ To prove ineffective assistance of counsel, a defendant must show that his or her counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced him or her. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact. *See People v. Garcia,* 815 P.2d 937, 941–42 (Colo.1991). The court reviewing counsel's performance should make every effort to "reconstruct the circumstances of counsel's challenged conduct" and

"evaluate the conduct from counsel's perspective at the time." *Id.* at 941 (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

 Because of the need for a developed factual record, an ineffective assistance of counsel claim should ordinarily be raised in a postconviction proceeding, not on direct appeal. *People v. Kelling,* 151 P.3d 650, 655 (Colo.App.2006). Only "in rare instances" are ineffective assistance of counsel claims presented so that they "need no further [factual] development prior to review on direct appeal." *Id.* (quoting *United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir.1995)); *see Ardolino v. People,* 69 P.3d 73, 77 (Colo. 2003).

 Here, the record reflects that, over Price's objection, the court granted the People's original motion to admit the similar act evidence regarding a fondling incident with A.P. that was the basis for Price's 1998 guilty plea. The People filed an amended notice of intent to admit evidence of similar acts, asserting that Price had also had intercourse with A.P. On the day before trial, Price filed a motion in limine seeking to exclude this evidence. The court denied this motion, determining in part that defense counsel had previously stipulated to the admission of the evidence. This stipulation apparently occurred at a hearing of which there is no transcript in the record.

We may not speculate as to the rationale, or lack thereof, for defense counsel's stipulation to the testimony. *See Garcia,* 815 P.2d at 941 (judicial inquiry into a defendant's counsel's strategic litigation decision will play a critical role in the evaluation of counsel's performance).

Because Price's ineffective assistance of counsel claim depends on evidence outside the record, we do not address it on appeal. *See People v. Griffin,* 224 P.3d 292, 295 (Colo. App.2009).

The judgment is affirmed.

Judge BERNARD and Judge CONNELLY concur.